# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE/OPELOUSAS DIVISION

**UNITED STATES OF AMERICA**        **CRIMINAL NO.  09-00124**

**VERSUS**        **JUDGE DOHERTY**

**ADOLFO ZIGA (04)**        **MAGISTRATE JUDGE HANNA**

### *FINDINGS AND RECOMMENDATION ON*
### *MOTION TO SUPPRESS*
### *(Rec. Doc. 229)*

Before the court is defendant Adolfo Ziga's Motion to Suppress.  The motion is opposed.  An evidentiary hearing was held on July 29, 2010.  Testifying at the hearing were Agent Chad Hazelwood of the Drug Enforcement Agency (DEA), Deputy Lance Guidroz of the St. Landry Parish Sheriff's Office, Criminal Patrol Unit, Deputy Joseph Francis, Detective Interdiction Officer, K-9 handler for St. Landry Parish Sheriff's Department, and Gladys Brenke, interpreter/translator.

### *Background and Argument*

Defendant was indicted on June 10, 2009, for the following felony offenses:   Count 1, Conspiracy to Possess with Intent to Distribute more than 50 Grams of Methamphetamine and 500 grams of Cocaine, in violation of 21 U.S.C. § 846; Count 24, Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A); Count 26, Possession with Intent to Distribute Cocaine (Powder), in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A) and 18 U.S.C. §2; and, Count 36, Forfeiture, 21 U.S.C. §853.

In his motion, defendant asks the court to suppress all evidence seized and any statements made by him as result of what defendant argues was an unlawful stop and search of

his vehicle.  Defendant argues there was no probable cause for the stop, that he was illegally

interrogated, and that his vehicle and person were illegally searched without probable cause, a

warrant, or valid consent.  Specifically, defendant argues he was stopped for following too

close on I-49, but that he was in fact not following too close and was issued no citation for

same.  Defendant also argues he only speaks Spanish and his verbal consent to search the

vehicle was not valid because Deputy Guidroz did not speak Spanish nor was he provided with

a Spanish interpreter.

In opposition, the government argues there was probable cause for the traffic stop as the

police officers had a reasonable suspicion the car contained illegal drugs based on wiretap

information.  Additionally, Deputy Guidroz witnessed Ziga commit a traffic violation.

Moreover, even if the initial detention was illegal, Ziga gave valid consent to the search.  He

was given a consent form written in Spanish, which he reviewed and stated the officer could

look in the car.  Therefore, the government concludes, there was probable cause or reasonable

suspicion to stop and search the vehicle.  Moreover, the consent to search given by defendant

was knowing and voluntary.  Therefore, the motion to suppress should be denied.

### *Applicable Law and Discussion*

The issues in this matter are whether the initial stop of Ziga's vehicle and its subsequent

search were reasonable under the Fourth and Fourteenth Amendments of the United States

Constitution.  "[A] search conducted without a warrant issued upon probable cause is 'per se

unreasonable . . . subject only to a few specifically established and well-delineated

exceptions.'" Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576

(1967); Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2031-2032, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 26 L.Ed.2d 854 (1973).

One exception to the warrant requirement relevant to this matter is the automobile exception, which "allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband." U.S. v. Fields, 456 F.3d 519, 523 (5th Cir. 2006), citing Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). "Probable cause is determined by examining the totality of the circumstances." U.S. v. Fields, 456 F.3d 519, 523 (5th Cir. 2006), citing Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Another of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. Davis v. United States, 328 U.S. 582, 593-594, 66 S.Ct. 1256, 1261-1262, 90 L.Ed. 1453 (1946). A comprehensive summary of the law regarding the seizure and search of vehicles was detailed in U.S. v. Alvarado-Ramirez, 975 F.Supp. 906, 911 (W.D.Tex. 1997), as follows:

> There is no question but that the stopping of an automobile by a police officer is a seizure within the meaning of the Fourth and Fourteenth Amendments. Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989); Delaware v. Prouse, 440 U.S. 648, 653, 661, 99 S.Ct. 1391, 1396, 1400, 59 L.Ed.2d 660 (1979); United States v. Shabazz, 993 F.2d 431, 434 (5th Cir.1993); United States v. Thomas, 787 F.Supp. 663, 669 (E.D.Tex.1992). A vehicle may lawfully be stopped (with one major exception, pertinent only in the border area, to be noted below) by a law enforcement officer only when there is probable cause to stop the vehicle or, lacking probable cause, when the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." See United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1, 10 (1989); United States v. Brignoni-Ponce, 422 U.S. 873,

881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975); United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995); United States v. Tellez, 11 F.3d 530, 532 (5th Cir.1993) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889). The latter type of stop is often referred to as an investigative or Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Cooper, 43 F.3d 140, 145 (5th Cir.1995). According to Terry, even in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity, United States v. Tapia, 912 F.2d 1367, 1370 (11 th Cir.1990). Such criminal activity includes traffic violations, however minor. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam) (stop for expired license plate); United States v. Kelley, 981 F.2d 1464 (5th Cir.1993) (stop for seatbelt violation); Breeland 53 F.3d at 102; Thomas, 12 F.3d at 1366; United States v. Shabazz, 993 F.2d 431, 434-35 (5th Cir.1993); United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir.1994).  Probable cause means "a fair probability that contraband or evidence of a crime will be found," Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585, 104 L.Ed.2d at 10; Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause. See United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3310-11, 3312, 87 L.Ed.2d 381 (1985) . . .  Under Terry, the judicial inquiry into the reasonableness of the search or seizure "is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Shabazz, 993 F.2d at 435 (citing Terry, 392 U.S. at 19, 88 S.Ct. at 1879).

Further, even if the initial stop of Ziga was illegal due to lack of probable cause or reasonable suspicion, if Ziga's consent to search was valid the evidence seized need not be suppressed.  The court in Alvarado-Ramirez explained as follows:

Simply because the initial stop of Defendant was illegal does not mean that the evidence seized must necessarily be suppressed. If the Defendant voluntarily consented to the search, even if the consent was given during a period of illegal detention, the search becomes validated and the evidence seized need not be suppressed. See Shabazz, 993 F.2d at 439 n. 10. To be valid, consent to search must be free and voluntary. United States v. Kelley,981 F.2d 1464, 1471 (5th Cir.1993) (quoting United States v. Olivier-Becerril, 861 F.2d 424, 425 (5th Cir.1988)). Where the initial stop is proper, the government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary.

Kelley, 981 F.2d at 1470; United States v. Yeagin, 927 F.2d 798, 800 (5th Cir.1991). However, where consent is preceded by a Fourth Amendment violation, the government has a heavier burden of proving consent. Kelley, 981 F.2d at 1470; United States v. Ruigomez, 702 F.2d 61, 65 (5th Cir.1983). The voluntariness of consent is a "question of fact to be determined from the totality of the circumstances." Kelley, 981 F.2d at 1470 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973)).

U.S. v. Alvarado-Ramirez, 975 F.Supp. 906, 919 (W.D.Tex. 1997).

## I.    Was the stop supported by probable cause or reasonable suspicion?

At the hearing, Agent Hazelwood testified that telephones had been wiretapped and on January 28, 2008, a telephone call between Ziga and co-defendant Demetrio Regalado had been intercepted. (R 6).  Hazelwood testified as a result of these telephone calls, he suspected that Ziga was on the way to pick up illegal narcotics.  (R 6, 7).  Prior to the interception, Hazelwood testified he and other members of the DEA had conducted hundreds of hours of surveillance. (R 7).  After the phone call, Hazelwood testified he called Captain Mike Hidalgo of the St. Landry Parish Sheriff's Office for help in stopping the vehicle Ziga was driving, which was headed through St. Landry Parish, by giving Hidalgo Ziga's license plate number, color, make, and model of the vehicle.  (R 7, 8).  Hazelwood testified the car came through the Opelousas area as predicted around 7:00 or 7:30 p.m. on January 29, 2008, and he watched the stop made on Interstate 49 just south of Opelousas, Louisiana, from the service road.  (R 8, 9).

Deputy Guidroz testified he was called and told to look for a green Jeep and given the license plate number.  (R 21).  He made a traffic stop of Ziga's vehicle on I-49 south of Opelousas for following too close.  (R 22).  He testified he did not write a ticket for this traffic

offense because the defendant was booked into the jail with that charge and "[y]ou can't write a citation and also book him."  (R 37).

The undersigned finds the stop was justified by probable cause as there was a fair probability that illegal drugs would be found in Ziga's car, as reported by Agent Hazelwood to Captain Mike Hidalgo and then to Deputy Guidroz.  Moreover, the undisputed testimony of Guidroz was that he observed Ziga following too closely behind an 18 wheeler truck on I-49. Therefore, the undersigned also finds the stop was justified at its inception under Terry v. Ohio, 392 U.S. 1, 33 S.Ct. 1868 (1968).

The undersigned also finds Deputies Guidroz and Francis had probable cause to conduct the search of the car.  Ziga had no driver license.  (R 22, 23).  Guidroz conducted a pat-down of Ziga and found a bulge in his left front pocket which contained a handful of cash money.  (R 25).  Francis testified he arrived at the scene of the traffic stop no longer than two minutes after the stop.  (R 53).  He noticed the front seat passenger was fidgeting, so he approached the passenger and held a conversation with him.  (R 53).   The passenger understood English.  (R 54). After discussion with the passenger, Francis and Guidroz compared the information Ziga and the passenger had provided, and the stories did not match up.  (R 47, 54).  Francis used his K-9 to conduct an open air sniff on the vehicle and the dog alerted  (R 28, 30).  Francis testified his dog alerted on the passenger rear side of the vehicle.  (R 55).  Thereafter they placed his dog back in the patrol car and conducted a search of defendant's vehicle.  (R 55, 56).   Francis testified as follows:

Q.     After your dog alerted to the Jeep, what if any suspicions did you have?

A.    Well, at that time my dog gave a positive alert on the vehicle, and at that time I felt that there was something – some type of illegal narcotic in that vehicle.

Q.    Okay.  And after your dog alerted and you found controlled substances in the vehicle, then the defendant, the two occupants were arrested?

A.    Yes, sir.

(R 64).

The Fifth Circuit has held a canine sniff is not a search itself, but a canine alert establishes probable cause to search a vehicle.  See U.S. v. Dortch, 199 F.3d 193 (5th Cir. 1999), referencing United States v. Seals, 987 F.2d 1102, 1006 (5th Cir. 1993) and United States v. Zucco, 71 F.3d 188, 191-192 (5th Cir. 1995).

The undersigned finds the officers had probable cause, due to the lack of driver's license, conflicting stories, cash monies, and canine alert to search the vehicle.

## II.    Did Ziga voluntarily consent to the search of his vehicle?

Both Deputies Francis and Guidroz testified Ziga gave consent to search his vehicle. Francis testified he heard Ziga say "you can look in my vehicle.  You can look.  You can look." (R 60).  Guidroz testified he asked Ziga for consent to search the car and Ziga said "yes, you look in the vehicle."  (R 26).  Guidroz also testified he presented Ziga with a voluntary consent to search form written in Spanish.  (R 26, 27).  After Ziga read the form, he responded "yes, you look in car."  (R 28).  Ms. Brenke was called as a witness and testified that the Spanish language at the bottom of the written consent to search form was essentially the same as the rights advised in English.  (R 66, 67).  Guidroz testified he did not have Ziga sign the form

because it was not a blank form, but had been written on during a previous traffic stop.  (R 27, 28).

The Fifth Circuit in United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir.  1988), explained voluntary consent as follows:

> To be valid, consent to search must be free and voluntary. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Galberth, 846 F.2d 983 (5th Cir.1988). The Supreme Court has stated that whether consent is voluntary is "a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).
>
> We have focused on six factors in the inquiry whether consent to a search is voluntary:
>
> > (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.
>
> Galberth, 846 F.2d at 987 (citing United States v. Ruigomez, 702 F.2d 61 (5th Cir.1983)). In doing so, we have noted that "although all of the above factors are highly relevant, no one of the six factors is dispositive or controlling of the voluntariness issue." Id. (citing United States v. Gonzales, 842 F.2d 748 (5th Cir.1988)).

Consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." Schneckloth v. Bustamonte, 412 U.S. 218, 235, 93 S.Ct. at 2052 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "Proof of knowledge of the right to refuse consent is not required to show voluntariness." United States v. Olivier-Becerril, 861 F.2d at 426 citing United States v. Davis, 749 F.2d 292, 296 (5th Cir. 1985).

There was no evidence introduced that Ziga's consent was made due to promise, threat or coercion of any kind.  The Spanish language form Ziga was given to read stated that he had the right to refuse to consent to the search and may revoke his consent at any time.  (R 76). The defendant was cooperative and of sufficient intelligence to understand what was occurring. (R 77).  The uncontroverted testimony is that Ziga gave his consent to search the vehicle multiple times.  Therefore, the undersigned finds Ziga's consent to search the vehicle was free and voluntary.

### *Conclusion and Recommendation*

The undersigned finds both the stop of the vehicle and the subsequent search were both supported by probable cause.  Moreover, Ziga consented to the search of his vehicle, and that consent was free and voluntary.  Therefore,

**IT IS RECOMMENDED** that defendant Adolfo Ziga's Motion to Suppress (Rec. Doc. 229) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See **Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 27th day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)